OPINION OF THE COURT
David B. Saxe, J.
This is an action brought pursuant to Administrative Code of the City of New York § C26-105.3 et seq., commonly referred to as Local Law No. 10 or the Building Facade Law.
The law is a testament to the tragic death of Grace Gold, a college student, resulting from a piece of loose masonry from *11 one of our city’s older buildings, jogged loose by some wind or other cause.
Section C26-105.3 requires that a critical examination of a building’s walls and appurtenances shall be conducted under the supervision of a licensed architect or engineer, who shall then submit to the Commissioner of Buildings a report which clearly documents the conditions revealed by the examination. Upon the filing of a report which contains unsafe conditions, the owner is required to immediately commence the repairs, reinforcement, or precautionary measures.
Section C26-86.5 (d) (3) provides in pertinent part that the Commissioner may determine that the presence of a violation or the failure to comply with any order or rule made by the Commissioner constitutes a condition dangerous to human life and safety. Any person who fails to comply with this rule or who fails to remove the violation, after being served with a notice indicating the existence of such a violation and requiring its removal or compliance shall be liable for a civil penalty of at least $150 per day.
At trial, it was determined that the defendant was served with a notice of violation on December 15, 1982 regarding the exterior walls at premises located at 111 East 80th Street, New York, New York. This notice of violation followed the August 11, 1981 report filed by the defendant’s architect with the Department of Buildings. That report signed by the defendant’s architect indicated that only precautionary work was necessary to the exterior of the building and that no unsafe conditions existed.
The architect’s report was reviewed by an engineer in the employ of the Department of Buildings who determined that due to certain language in the report, the building actually had unsafe conditions. The notice of violation followed. It is conceded that no one from the Department of Buildings ever examined the premises in question prior to the issuance of the notice of violation on December 15, 1982. This notice of violation was predicated upon one of several "rules relating to Conditions of a Building’s Exterior Walls and Appurtenances Thereof that Constitute Conditions Dangerous to Human Life and Safety” (the rules), adopted by the Commissioner of Buildings on August 23, 1982. The particular rule in question provided: "1. The following violations are determined to constitute conditions dangerous to human life and safety and subject to the provisions of Paragraph 3 of Subdivision d of Section *12 C26-86.5 of the Administrative Code. Any conditions relating to the exterior walls of a building and appurtenances thereof that is designated (a) by an architect or engineer as being in an unsafe condition in the report filed by an architect or engineer with the Department of Buildings pursuant to Section C26-105.3 of the Building Code, or (b) by personnel of the department as being an unsafe condition upon reviewing the afore-mentioned report or after having made an inspection of the building”. (Emphasis added.)
The gravamen of the defendant’s argument is that the ordinance under scrutiny permits only one method of determining whether an unsafe condition exists. That method, says the defendant, to the exclusion of any other, is the reliance upon the findings and conclusions of the examining architect. The rule adopted by the Department of Buildings 12 days after the filing of defendant’s architect’s report is, it is argued by the defendants, an impermissible legislative action by the Department of Buildings that violates fundamental principles of administrative law.
What the defendant appears to be saying is that the ordinance (Administrative Code § C26-105.3) grants to the architect or engineer the exclusive power to determine that the exterior walls and appurtenances are unsafe.
There is simply no merit to this position. Nowhere does section C26-105.3 grant to the architect or engineer this exclusive power. And, nowhere does section C26-105.3 remove from the Commissioner the power to determine that the exterior walls and appurtenances are unsafe. That section does not mandate, as defendant suggests, that immediate repairs must be commenced only if the defendant’s architect or engineer labels the conditions which he is required to report "unsafe”.
The ordinance imposes a duty upon the architect or engineer to file a report which documents the building conditions. The ordinance does not vest the architect or engineer with the sole and exclusive power or any authority at all to determine that the walls and appurtenances are unsafe. It does not permit the architect’s characterization of the building as merely needing precautionary repairs as creating a presumption of the safe condition of the building. Absent a statutory expression that the architect’s characterization created such a presumption, the final determination of a building’s safe condition rests with the Department of Buildings. (NY City Charter §§ 643, 645 [b].)
*13 The determination here that the conditions reported were, in fact, unsafe, were made pursuant to a procedure employed wherever a report is submitted indicating either precautionary or unsafe conditions. First, an engineer employed by the Department of Buildings reviews the conditions described in the report. That was done here and it was determined by the engineer for the Department of Buildings that the conditions were described as unsafe. At trial, the Commissioner testified as to four different unsafe conditions. The Commissioner went on to note that "loose masonry is unsafe”, noting "many situations where loose masonry is jogged loose, by wind or persons”, and "people have been injured by loose masonry falling”.
At trial, it was testified that the defendants removed and replaced masonry sections on both the wall and the sill and on both, loose material was removed. Indeed "the cracked chimney was repaired by removing loose brick and resetting masonry units where needed.” This work as well as the conditions described in the defendant’s architect’s form indicate that the Commissioner’s determination was not arbitrary and was supported by the evidence supplied by the defendant’s own engineer.
With respect to the penalties, Administrative Code § C2686.5 (d) (3) mandates that, in addition to any other penalties, defendant is liable for a civil penalty of not less than $150 per day commencing on the date of service of the notice of violation and terminating on such date that removal or compliance has been substantially completed. The defendant was served with the notice of violation on December 15, 1982; its form indicated compliance on November 23, 1984. Accordingly the fine to be assessed representing 708 days of violation would be $106,200.
Additionally, the defendant is also liable for a penalty of $250 for each month of noncompliance with Administrative Code § C26-105.3 or $5,750.
Accordingly, the plaintiff shall be entitled to have a judgment entered in its favor in the amount of $111,950.